LOKEN, Circuit Judge,
dissenting in part.
As the Court’s thorough opinion makes clear, hindsight suggests that all the parties to this July 1995 dispute acted unreasonably. The Bank sought a replevin or *743 der it was unprepared to implement and then insisted its borrower’s store premises be immediately seized. The County Sheriffs padlocked store premises that were not encompassed by the replevin order without discussing. with Audio Odyssey whether less drastic measures would protect the Bank’s interest in the replevined collateral. And Audio Odyssey dallied for weeks rather than take prompt legal action to recover the store premises.
In my view, the key to unraveling these events, at least for purposes of Audio Odyssey’s § 1983 claims, lies in the breadth of the replevin order- — “All inventory, fixtures, accounts, furniture, equipment and machinery” found on the store premises. The premises were part of a shopping center. Audio Odyssey was a tenant, not the owner, of those commercial premises. Audio Odyssey’s only interest in possession of the premises was to operate its retail store. If the store was stripped of all the personal property listed in the court order, it would obviously be inoperable, at least until Audio Odyssey replaced the inventory, fixtures, furniture, equipment, and machinery.
The replevin order gave the Bank the right to immediate possession of all the named personal property. If the order thereby authorized the County Sheriffs to prevent Audio Odyssey from selling the replevied property before the order could be executed — and the court now agrees that it did — then Audio Odyssey’s right as a tenant to continuing possession of the store premises was of no immediate value. That, is why it was reasonable for the Bank as secured creditor to urge that Audio Odyssey’s store operations cease until the replevin order could be executed. That is why it was objectively reasonable for Sergeant Barton to review the breadth of the replevin order and conclude that it authorized the County Sheriffs to close the store for a reasonable period of time. And that is why Audio Odyssey made no effort to reaccess the store premises until August, after its debtor-creditor negotiations with the Bank had proven unsuccessful.
The district court thoroughly analyzed the applicable constitutional principles and, mindful of the practical considerations that underlie any Fourth Amendment reasonableness inquiry, concluded that defendants are entitled to summary judgment dismissing all § 1983 claims. Applying its own more selective hindsight, the court reverses in part, thereby casting doubt on the accuracy of the Supreme Court’s prediction that, when creditors obtain state court orders before seizing property, the Fourth Amendment “should not foment a wave of new litigation in the federal courts.” Soldal v. Cook County, 506 U.S. 56, 72, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992). In my view, permitting this case to proceed further in federal court is both wrong and regrettable. Accordingly, I respectfully dissent from Part IV of the court’s opinion. I would affirm the judgment of the district court.